FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 19, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| REBECCA W.,[1] <br>                 Plaintiff, <br><br>    vs. <br><br> ANDREW M. SAUL, <br> COMMISSIONER OF SOCIAL <br> SECURITY,[2] <br>              Defendant. | No. 1:18-cv-03222-MKD <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 14, 15 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 14, and denies Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

ORDER - 3

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

ORDER - 4

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

ORDER - 5

education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.
*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to
step five, the burden shifts to the Commissioner to establish that 1) the claimant is
capable of performing other work; and 2) such work "exists in significant numbers
in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.
Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On January 23, 2015, Plaintiff applied both for Title II disability insurance

benefits and Title XVI supplemental security income benefits alleging a disability

onset date of June 17, 2014. Tr. 221-36. The applications were denied initially,

Tr. 120-28, and on reconsideration, Tr. 131-52. Plaintiff appeared before an

administrative law judge (ALJ) on May 16, 2017. Tr. 34-63. On September 29,

2017, the ALJ denied Plaintiff's claim. Tr. 12-31.

At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 17, 2014, the alleged onset date. Tr. 18. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative joint disease of the right foot and residuals from right rotator cuff tear surgery. Tr. 18-19.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 19. The ALJ then concluded that Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff] is limited to occasional reaching overhead with her dominant right upper extremity. She is limited to occasional stooping, squatting, crouching, crawling, kneeling, and climbing stairs and ramps. She can never climb ladders, ropes, and scaffolds.

Tr. 20.

At step four, the ALJ found Plaintiff was able to perform her past relevant work as a counter attendant. Tr. 25. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of June 17, 2014, though the date of the decision. Tr. 25.

On September 28, 2018, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ conducted a proper step-two analysis;

2. Whether the ALJ properly evaluated Plaintiff's symptom claims;

3. Whether the ALJ properly evaluated the medical opinion evidence;

4. Whether the ALJ properly evaluated lay witness evidence; and

5. Whether the ALJ conducted a proper step-four analysis.

ECF No. 14 at 2.

**DISCUSSION**

**A. Step Two**

Plaintiff faults the ALJ for failing to find that borderline intellectual functioning was a severe impairment and for failing to consider at step two whether Plaintiff's shoulder impairment caused psychological effects. ECF No. 14 at 4-7.

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c),

416.920(c).  To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. §§ 404.1521, 416.921.

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…."  Social Security Ruling (SSR) 85-28 at *3.  Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1522, 416.922; SSR 85-28 at *3.[3]

---

[3] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER - 9

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

First, Plaintiff asserts the ALJ should have found that she had the severe impairment of borderline intellectual functioning at step two based on Dr. Sawyer's "rule out" diagnosis and Dr. Postovoit's reviewing opinion. ECF No. 15 at 5. Dr. Sawyer examined Plaintiff on June 24, 2015 and diagnosed her with "[r]ule out borderline intellectual functioning." Tr. 427. "A 'rule-out' diagnosis is by no means a diagnosis. In the medical context, a 'rule-out' diagnosis means there is evidence that the criteria for a diagnosis *may* be met, but more information is needed in order to rule it out." *Carrasco v. Astrue*, No. ED CV 10-0043 JCG, 2011 WL 499346, at *4 (C.D. Cal. Feb. 8, 2011) (emphasis in original) (internal citations omitted). A "rule out" diagnosis, standing alone, is not sufficient to establish the existence of a severe impairment. *See, e.g., Crawford v. Colvin*, No. C13-1786-JCC, 2014 WL 2216115, at *5 (W.D. Wash. May 29, 2014); *Jackson v. Astrue*, No. ED CV 09-677-PJW, 2010 WL 1734912, at *2 (C.D. Cal. Apr. 28,

ORDER - 10

2010); *Simpson v. Comm'r, Soc. Sec. Admin.*, No. Civ. 99-1816-JO, 2001 WL 213762, at *8 (D. Or. Feb. 8, 2001). As discussed *infra*, the ALJ gave little weight to Dr. Sawyer's opinion as to his rule out borderline intellectual functioning diagnosis. Tr. 24.

Second, Plaintiff asserts the ALJ should have found that Plaintiff's shoulder impairment caused psychological effects at step two based on Dr. Postovoit's finding that "[t]he injury could produce difficulty concentrating and completing tasks." ECF No. 14 at 5 (citing Tr. 71-72). As discussed *infra*, the ALJ determined that Dr. Postovoit's opinion was inconsistent with the record as a whole, including Plaintiff's lack of mental health treatment, her performance at the consultative psychological examination, and her documented daily activities. Tr. 24, 265-66, 288, 425-26. Plaintiff bears the burden of proof to establish that she has a severe impairment. *Tackett*, 180 F.3d at 1098. Although Plaintiff now asserts that she has the severe impairments of borderline intellectual functioning and psychological effects from her shoulder injury, Plaintiff did not allege any mental impairment or associated functional limitations in her disability report, Tr. 248-58, her function report, Tr. 287-95, or in her appeal of the initial determination, Tr. 278-84. When specifically asked at the administrative hearing if she had any mental health impairments, Plaintiff responded, "I do have a little depression going on with the divorce and everything that's going on." Tr. 54. On

this record, the ALJ did not err in failing to identify borderline intellectual functioning or psychological effects from her shoulder injury as severe impairments.

## B.   Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting her subjective symptom claims. ECF No. 14 at 7-17. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being

discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence.  Tr. 21.

### 1.  Inconsistent with Objective Medical Evidence

The ALJ found that Plaintiff's physical symptom complaints were not supported by the medical evidence.  Tr. 21-22.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).  Minimal objective evidence is a factor which may be relied upon to discount a claimant's testimony, although it may not be the only factor.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ found Plaintiff's allegations that she was unable to work due to pain in her right arm, pain in her left shoulder, and a bone spur in her right foot were inconsistent with the medical evidence in the record.  Tr. 21-22.  The ALJ determined that Plaintiff's allegations were out of proportion to physical examinations, which regularly revealed normal or near normal range of motion of

ORDER - 14

the upper extremities, Tr. 457, 466, 515, with full motor strength, intact sensation, and/or normal muscle bulk and tone and no deformity, Tr. 448, 457, normal or near normal range of motion of the lower extremities, Tr. 457, 446, 466, 486, 515, with normal muscle bulk and tone with no deformity, Tr. 448, no swelling, no edema, and no tenderness to midfoot compression, Tr. 484, 506, and steady gait, Tr. 458, 468, 515. Tr. 22. The ALJ observed that in April 2015, Plaintiff showed active forward flexion to 150 degrees and abduction to 140 degrees and her treating physician's assistant determined that Plaintiff could discontinue physical therapy and continue with only a home-exercise program. Tr. 22 (citing Tr. 414). The ALJ highlighted that in a May 2015 orthopedic evaluation, it was further noted that Plaintiff's treatment for her shoulder injury had been concluded. Tr. 22 (citing Tr. 413). The ALJ observed that at the May 2015 physical examination, Plaintiff demonstrated some limits in range of motion of bilateral shoulders. Tr. 22, *see, e.g.,* Tr. 416 (active range of motion of the right shoulder was 135 degrees flexion, 30 degrees extension, 30 degrees adduction, 110 degrees abduction, 20 degrees internal rotation and 80 degrees external rotation); Tr. 416 (Plaintiff's left shoulder had about 165 degrees of flexion and abduction and 70 degrees of internal rotation). The ALJ stated that although Plaintiff may still struggle with regaining full motion of her right shoulder, he accounted for that limitation in the RFC. Tr. 22.

ORDER - 15

Plaintiff argues that all of the ALJ's supporting citations were derived from treatment unrelated to her severe impairments, such as emergency room visits for cough/fever symptoms, chest pain, and a finger injury. ECF No. 14 at 16. Plaintiff contends that this all occurred after treatment for her shoulder was ceased, Tr. 417, and the records from when her shoulder was being actively treated support greater limitations. ECF No. 14 at 16. As Defendant notes, these records are the only physical examinations that measured Plaintiff's upper extremities after May 2015. ECF No. 15 at 9. It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). Here, the ALJ reasonably concluded, based on this record, that the objective medical evidence did not support the level of physical impairments alleged by Plaintiff. Tr. 21-22. The ALJ's finding is supported by substantial evidence and was a clear and convincing reason, in conjunction with the other identified reasons, *see infra*, to discount Plaintiff's symptom complaints.

ORDER - 16

### 2. Inconsistent with Daily Activities

The ALJ found that Plaintiff's activities were inconsistent with the level of impairment Plaintiff alleged. Tr. 22. An ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or nonexertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

The ALJ noted Plaintiff reported disabling limitations in lifting, carrying, postural positions, moving around, walking for long distances, and standing for prolonged periods. Tr. 20-22. However, the ALJ observed Plaintiff's daily activities included regularly preparing simple meals, doing laundry, cleaning, driving a car, getting around daily, going for rides, shopping in stores for groceries and other personal items, managing money, reading, scrapbooking, watching television, spending time with her sisters, daughter, and grandchildren, attending

sporting events, going places alone, and taking walks with her grandchildren. Tr. 23, 264-68, 288-92. The ALJ reasonably concluded that these activities were inconsistent with the level of impairment Plaintiff alleged. Tr. 22-23.

Plaintiff challenges the ALJ's finding by asserting that the ALJ merely provided a long list of basic activities before generally asserting that these activities do not support the level of impairment that Plaintiff alleged. ECF No. 14 at 10. However, Plaintiff fails to identify specific error in the ALJ's analysis. The ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities that "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. Here, the ALJ identified Plaintiff's specific alleged impairments and noted specific activities that indicated Plaintiff was less limited than she alleged. Tr. 20-23. This was a clear and convincing reason to give less weight to Plaintiff's subjective symptom testimony.

### 3. *Childcare Activities*

The ALJ discounted Plaintiff's symptom claims as inconsistent with the ability to babysit for her grandchildren. Tr. 23. The ability to care for others without help has been considered an activity that may undermine claims of totally disabling pain. *Rollins*, 261 F.3d at 857. For care activities to serve as a basis for the ALJ to discredit a claimant's symptom claims, the record must identify the nature, scope, and duration of the care involved, showing that the care is "hands

on" rather than a "one-off" care activity. *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017). Here, the ALJ noted that Plaintiff reported in her August 2015 function report that she babysat her grandchildren along with her husband. Tr. 23 (citing Tr. 288). The ALJ observed that Plaintiff also reported her husband was still working, Tr. 424, and Plaintiff's testimony revealed that she was divorcing her husband and no longer living with him, Tr. 40. Tr. 23. The ALJ did not further detail these babysitting activities nor does the record provide any additional details. While care activities may rebut a claimant's symptom claims, the record lacks substantial evidence to support the ALJ's decision that Plaintiff's care-taking activities were inconsistent with her symptom claims. This reason is not supported by substantial evidence.

This error is harmless because the ALJ identified numerous specific, clear, and convincing reasons to discount Plaintiff's symptom claims. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason

for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

### 4. Ability to Work with Impairments

The ALJ found Plaintiff's allegations were inconsistent with her ability to work with her impairments during the period at issue. Tr. 23. Working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (seeking work despite impairment supports inference that impairment is not disabling). The ALJ noted that Plaintiff reported she experienced right upper extremity pain that prohibited her from working by limiting her ability to reach overhead, and a bone spur in her right foot that prohibited her from working by limiting her ability to move around, walk for long distances, and stand for prolonged periods. Tr. 21. However, the ALJ observed that Plaintiff was able to work during the relevant time period despite her impairments. Tr. 23; *see, e.g.,* Tr. 239-44 (Plaintiff's earnings record indicated that she earned $1,156.76 in 2015); Tr. 484 (In June 2015, Plaintiff reported being on her feet "all day long" at a packing plant); Tr. 42-50 (Plaintiff testified that beginning in June 2016, she worked as a prep cook at a retirement center from 6:30 a.m. through 10:15 a.m. five days a week for a total of 30 hours per week on average, with job duties that included preparing jello and iced tea, and

cutting things up, and her job required her to be standing and walking more often than sitting); Tr. 50 (Plaintiff testified she had not missed any scheduled work days and her supervisor told her she was doing well with no complaints); Tr. 42-43, 51 (Plaintiff testified she was not working full-time because the retirement center's occupancy was low, she was trying to work as many hours as possible, and sometimes she worked the entire day at both lunch and dinner shifts). Tr. 23. The ALJ reasonably concluded that Plaintiff's ability to work with her impairments indicated that Plaintiff's impairments were not as severe as she alleged. Tr. 22.

### 5. Stopped Work for Reasons Unrelated to Impairments

The ALJ found Plaintiff's symptom complaints were less reliable because she stopped working for reasons other than her impairments. Tr. 23. An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition in making a credibility determination. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). The ALJ noted that Plaintiff reported she experienced right upper extremity pain that prohibited her from working by limiting her ability to reach overhead, and a bone spur in her right foot that prohibited her from working by limiting her ability to move around, walk for long distances, and stand for prolonged periods. Tr. 21. However, the ALJ also noted that at a consultative examination, Plaintiff stated that her last employment as a sorter and packer at Cowiche Growers ended because "she was no longer

needed and was laid off" rather than terminated.  Tr. 23 (citing Tr. 425).  The ALJ

noted that, prior to her July 2014 surgery, Plaintiff was already released for light

duty in the packing plant but she was "let go."  Tr. 23 (citing Tr. 415).  The ALJ

reasonably concluded that this reason for stopping work undermines Plaintiff's

claim that her right arm pain and the bone spur on her right foot suddenly made it

impossible for her to work at all.  Tr. 23.  The ALJ permissibly relied upon this

reason to discredit Plaintiff's symptom claims.  This finding is supported by

substantial evidence.

### 6. *Failure to Follow Treatment Recommendations*

The ALJ found Plaintiff's symptom complaints were inconsistent with her

failure to follow treatment recommendations.  Tr. 22.  "A claimant's subjective

symptom testimony may be undermined by an unexplained, or inadequately

explained, failure to . . . follow a prescribed course of treatment."  *Trevizo*, 871

F.3d at 679 (citations omitted).  Failure to assert a reason for not following

treatment "can cast doubt on the sincerity of the claimant's pain testimony."  *Id*.

Here, the ALJ noted Plaintiff alleged disabling limitations due to shoulder

pain and a bone spur in her right foot.  Tr. 21.  However, the ALJ observed that in

November 2015, physician's assistant Raylee Weaver-Jensen reported that Plaintiff

did not pick up medication she had been prescribed five months earlier in June

2015.  Tr. 22 (citing Tr. 487).  The ALJ also noted that Ms. Weaver-Jensen

reported that Plaintiff had not used anything else to help her shoulder or foot pain.

Tr. 22 (citing Tr. 487). The record also included a September 2015 treatment note

by Ms. Weaver-Jensen reporting that Plaintiff had not used her medication

consistently and that Plaintiff had an x-ray done on her foot but failed to follow up.

Tr. 486. Plaintiff argues that she has borderline intellectual functioning and was

assessed with limited insight into her illness, which may limit her understanding of

her disorder or need for treatment. ECF No. 14 at 9 (citing Tr. 427). However, in

support of this contention, Plaintiff cites to a diagnosis of rule out borderline

intellectual functioning, Tr. 427, and as discussed *supra*, "[a] 'rule-out' diagnosis

is by no means a diagnosis." *Carrasco*, 2011 WL 499346, at *4. When there is no

evidence suggesting that the failure to seek or participate in treatment is

attributable to a mental impairment rather than a personal preference, it is

reasonable for the ALJ to conclude that the level or frequency of treatment is

inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14.

The ALJ reasonably concluded that Plaintiff's alleged disabling limitations were

inconsistent with her failure to follow treatment recommendations. This was a

clear and convincing reason to give less weight to Plaintiff's subjective symptom

testimony.

## C.    Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the medical opinions of Dave Stanford, M.D., Gregory Sawyer, M.D., Leslie Postovoit, Ph.D., Robert Vestal, M.D., Donald Hill, M.D., and Roy Pierson, M.D.  ECF No. 14 at 17-18.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported

by clinical findings." *Bray*, 554 F.3d at 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830–31). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews*, 53 F.3d at 1041.

### 1. Dr. Stanford

In September 2015, nonexamining psychologist Dave Stanford, Ph.D., determined at the reconsideration level that Plaintiff had not been formally diagnosed with any psychiatric conditions and that she had worked her entire adult life at substantial gainful activity levels, which showed that a formal intelligence test was "pointless." Tr. 98. The ALJ gave significant weight to Dr. Stanford's opinion. Tr. 24.

Plaintiff contends the ALJ erred by giving significant weight to the opinion of Dr. Stanford, reviewing psychologist, and little weight to Plaintiff's examining provider, Dr. Sawyer. ECF No. 14 at 19. The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1041. Other cases have upheld the rejection of an examining or treating physician based in part on the

testimony of a nonexamining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the nonexamining doctor's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion)); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

The ALJ found that the opinion of Dr. Stanford was consistent with the record as a whole. Tr. 24. Plaintiff suggests the ALJ should have credited the opinions of Plaintiff's examining provider and the State agency reviewer at the initial level over the opinion of Dr. Stanford on the issue of Plaintiff's allegations of mental impairments. However, as discussed *infra*, the ALJ provided legally sufficient reasons for giving less weight to the opinions of the examining provider and the initial level reviewer, and for giving more weight to Dr. Stanford's opinion.

### 2. Dr. Sawyer

On June 24, 2015, Greg D. Sawyer, M.D., Ph.D., conducted a psychiatric evaluation of Plaintiff. Tr. 422-28. Dr. Sawyer opined that Plaintiff would have difficulty managing her funds, accepting instructions from supervisors, attempting to understand, carry out, and remember complex and one or two-step instructions, attempting to perform work activities on a consistent basis without special or additional instruction, attempting to sustain concentration and to persist in a work-related activity at a reasonable pace, and attempting to deal with the usual stresses encountered in the workplace, particularly to the extent that the stress would include mobilizing her intellect. Tr. 427-28. Dr. Sawyer determined that Plaintiff would not have difficulty attempting to maintain effective social interactions on a consistent and independent basis with supervisors, coworkers, and the public, attempting to maintain regular attendance in the workplace, and attempting to complete a normal workday or workweek without interruptions. Tr. 427-28. Dr. Sawyer further opined that there was "little doubt" that Plaintiff felt depressed at times and she "feels sad that she is not as functional as she use to be and she is in pain," but her "description does not rise to the level of supporting a diagnosis of depression as opposed to the feeling of being depressed." Tr. 427. Dr. Sawyer noted that Plaintiff would not benefit from mental health treatment unless it was non-medication treatment and therapeutic. Tr. 427. Dr. Sawyer opined that

Plaintiff "appears to have borderline intellectual functioning, although [he] did not perform formal testing." Tr. 427. He found no psychiatric diagnosis and diagnosed her with rule out borderline intellectual functioning. Tr. 427.

The ALJ gave Dr. Sawyer's opinion some weight.[4] Tr. 24. The ALJ gave little weight to Dr. Sawyer's diagnosis of borderline intellectual functioning and his opinion that Plaintiff would have difficulty managing her own funds, accepting instructions from supervisors, understanding, carrying out, and remembering simple and complex instructions, and maintaining effective social interactions on a consistent and independent basis with supervisors, coworkers, and the public. Tr. 24-25 (citing Tr. 427-28). Because Dr. Sawyer's opinion was contradicted by the nonexamining opinion of Dr. Stanford, Tr. 98, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Sawyer's opinion. *Bayliss*, 427 F.3d at 1216.

_____

[4] The ALJ gave significant weight to Dr. Sawyer's opinion that Plaintiff's description of her feeling of being depressed did not rise to the level of supporting a diagnosis of depression, Tr. 427, because this portion of his opinion was consistent with Plaintiff's treatment history, her performance at appointments and a mental status examination before Dr. Sawyer, and her self-reported daily activities and social functioning. Tr. 24.

a. Inconsistent with Findings

First, the ALJ found that Dr. Sawyer's opinion was inconsistent with his own descriptions of Plaintiff's presentations during the interview and mental status examination. Tr. 24-25 (citing Tr. 425-28). A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). Dr. Sawyer's interview notations focus on Plaintiff's shoulder pain and its effects, not on her intellectual functioning. *See, e.g.,* Tr. 423 (Plaintiff told Dr. Sawyer that she was only "a little depressed" and she does not feel it all the time); Tr. 425 (Plaintiff admitted to Dr. Sawyer that she feels "happy" most of the time); Tr. 426 (Plaintiff denied having any suicidal ideation, feeling worthless or guilty, paranoid ideation, or ideas of reference or delusions); Tr. 423 (Plaintiff told Dr. Sawyer that her memory is good and her concentration is "okay"). The ALJ also determined that Dr. Sawyer's opinions were inconsistent with the results of Plaintiff's mental status examination. Tr. 19; *see, e.g.,* Tr. 425 (Plaintiff was alert, oriented, cooperative, friendly, open, and actively candid); Tr. 425-27 (Plaintiff showed flat and blunt affect at times, fair to poor judgment, and limited insight and general fund of knowledge, but she maintained normal eye contact, adequate concentration, and good attention span); Tr. 425-27 (Plaintiff displayed normal speech, logical

thought process, and normal ability to comprehend). The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan*, 528 F.3d at 1198 (internal quotation marks omitted). Here, the ALJ reasonably concluded that Dr. Sawyer's findings from the interview and mental status examination did not support his assessment that Plaintiff would have difficulty managing her own funds, accepting instructions from supervisors, understanding, carrying out, and remembering simple and complex instructions, and maintaining effective social interactions on a consistent and independent basis with supervisors, coworkers, and the public. Tr. 25-25. This was a specific, legitimate reason to assign little weight to Dr. Sawyer's opinion.

b. Inconsistent with Daily Activities

Second, the ALJ found that Dr. Sawyer's opinion was inconsistent with Plaintiff's activities during the relevant time period. Tr. 25. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Here, the ALJ observed that although Dr. Sawyer opined Plaintiff had borderline intellectual functioning (rule out diagnosis) and would have difficulty managing her own funds, accepting instructions from supervisors, understanding,

ORDER - 30

carrying out, and remembering simple and complex instructions, and maintaining effective social interactions on a consistent and independent basis with supervisors, coworkers, and the public, Tr. 427-28, Plaintiff reported that she was able to manage her own funds, read, work on scrapbooking, watch television, cook simple meals and sometimes full course meals, do housework, babysit for her grandchildren, visit her daughter, spend time with her family, shop in stores, drive a car, and work at least 30 hours per week since June 2016. Tr. 25 (citing 264-68, 288-92). Further, the ALJ noted that Plaintiff testified she learned to become a prep cook after training from her boss in early 2016. Tr. 25 (citing Tr. 47). The ALJ found this indicated that Plaintiff had the ability to understand, remember and carry out at least simple instructions, and her intellectual functioning was not as limited as opined by Dr. Sawyer. Tr. 25. The ALJ reasonably concluded that the record documented activities that were inconsistent with Dr. Sawyer's opinion as to Plaintiff's functional limitations. This finding is supported by substantial evidence.

### 3. Dr. Postovoit

State agency psychological consultant Leslie Postovoit, Ph.D., reviewed Plaintiff's medical record at the initial determination level and opined that Plaintiff's borderline intellectual functioning was a severe impairment. Tr. 71-78. Dr. Postovoit opined that Plaintiff was capable of performing simple and repetitive

tasks but would have difficulty with more complex tasks due to psychiatric symptoms. Tr. 76. Dr. Postovoit also determined that Plaintiff was capable of sustained concentration, pace, and persistence for the normal workweek/workday, but that she may experience mild to moderate disruption on occasion due to psychiatric symptoms. Tr. 76.

The ALJ gave Dr. Postovoit's opinion little weight. Tr. 24. The Commissioner may reject the opinion of a nonexamining physician by reference to specific evidence in the medical record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

The ALJ concluded that Dr. Postovoit's opinion was inconsistent with the record as a whole. Tr. 24. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. Here, the ALJ noted that Dr. Postovoit's opinion was not supported by the evidence of Plaintiff's lack of mental health treatment, her performance at the consultative psychological examination, and her documented daily activities. Tr. 24; *see* Tr. 425 (At the June 25, 2014 psychological examination, Plaintiff was "able to concentrate on the exam, follow [the provider's] questions and answer them appropriately," she exhibited "good" attention span, and the provider did not need to redirect Plaintiff); Tr. 426 (At the June 2015 examination, Plaintiff's expressive language and thought process were logical with no problems and her receptive language was normal with

good ability to comprehend questions); Tr. 265-66, 288 (Plaintiff reported an ability to cook simple meals and sometimes "a full course meal," do chores and light cleaning, drive a car, go out alone, shop in stores, pay bills, handle a savings account, use a checkbook/money orders, babysit for her grandchildren). As discussed *supra*, although Plaintiff now asserts that she has the severe impairment of borderline intellectual functioning, Plaintiff did not allege any mental impairment or associated functional limitations in her disability report, Tr. 248-58, her function report, Tr. 287-95, or in her appeal of the initial determination, Tr. 278-84. Plaintiff did not testify as to any mental limitations, except when asked at the administrative hearing if she had any mental health impairments, Plaintiff responded, "I do have a little depression going on with the divorce and everything that's going on." Tr. 54. The ALJ referenced specific evidence in the medical record when discounting Dr. Postovoit's opinion.

### 4. Dr. Vestal

In September 2015, nonexamining physician Robert Vestal, M.D., determined at the reconsideration level that Plaintiff was able to occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand and/or walk for a total of about six hours in an eight-hour workday, and sit with normal breaks for a total of about six hours in an eight-hour workday. Tr. 99-100. Dr. Vestal opined that Plaintiff was limited to frequent pushing and pulling with her right upper

extremity, she was limited in her ability to reach overhead with her right arm, and she could never climb ladders, ropes, or scaffolds. Tr. 100. The ALJ gave some weight to Dr. Vestal's opinion.[5] Tr. 24.

Plaintiff argues that the ALJ erred by relying on the reviewing source opinion of Dr. Vestal when determining Plaintiff's functional limitations for the RFC. ECF No. 14 at 17. The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1041. Other cases have upheld the rejection of an examining or treating physician based in part on the testimony of a nonexamining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the nonexamining doctor's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes*, 881 F.2d at 751-55); *Roberts*, 66 F.3d at 184. Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of

---

[5] Plaintiff erroneously contends that the ALJ gave significant weight to Dr. Vestal's opinion when making the argument that the ALJ erred by relying on the opinions of the reviewing sources. ECF No. 14 at 17.

ORDER - 34

contrary conclusions by examining or treating physicians.  *Andrews*, 53 F.3d at 1039.

The ALJ found that the opinion of Dr. Vestal was "generally consistent with the record as a whole," but the ALJ further limited Plaintiff to occasional reaching with her dominant right upper extremity, occasionally stooping, squatting, crouching, crawling, kneeling, and climbing ramps and stairs.  Tr. 24.  Plaintiff offers no argument as to the ALJ's weighing of Dr. Vestal's opinion, except to assert that the ALJ gave significant weight to the opinions of Drs. Vestal and Stanford while rejecting the opinions of Drs. Postovoit and Sawyer.  ECF No. 14 at 17.  However, Drs. Stanford, Postovoit, and Sawyer all provided opinions about Plaintiff's mental functioning while Dr. Vestal assessed Plaintiff's physical functioning.  As discussed *infra*, the ALJ erred by failing to address the opinions of Drs. Hill and Pierson who also assessed Plaintiff's physical functioning.  On remand, the ALJ is instructed to reevaluate the medical source opinions as to Plaintiff's physical impairments, including the opinion of Dr. Vestal.

*5.  Dr. Hill*

Plaintiff's treating physician, Donald Hill, M.D., examined Plaintiff on February 22, 2014, and diagnosed Plaintiff with a right shoulder strain.  Tr. 365. He opined that Plaintiff had diffusely decreased range of motion in her right shoulder, she could never climb, reach with her right side, work above shoulder

level with her right side, and she could seldom crawl, or flex or extend her right wrist. Tr. 365. Dr. Hill opined that Plaintiff could perform modified work duty until March 10, 2014. Tr. 365. Dr. Hill examined Plaintiff again on March 17, 2014. Tr. 362. Dr. Hill again diagnosed Plaintiff with a right shoulder strain. Tr. 362. He noted Plaintiff had decreased range of motion in her right shoulder and opined that Plaintiff could perform modified work duty until April 7, 2014. Tr. 362. He opined that Plaintiff could never work above shoulder level with her right arm, never forcefully grasp with her right hand, and seldom reach with her right arm. Tr. 362. Dr. Hill also instructed Plaintiff to limit the use of her left arm for repetitive work to four cumulative hours per day. Tr. 362-63. He also opined that Plaintiff could only occasionally reach, work above her shoulders, or forcefully grasp with her left side. Tr. 362.

The ALJ failed to discuss Dr. Hill's opinion or assign a level of weight to it. The ALJ must evaluate every medical opinion received according to a list of factors set forth by the Social Security Administration. 20 C.F.R. §§ 404.1527(c), 416.927(c). "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison*, 759 F.3d at 1012 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). Defendant asserts that the ALJ was not required to address Dr. Hill's statements because his opinion addressed Plaintiff's impairments before the

relevant time period and prior to Plaintiff's surgery and therefore, his opinion has limited relevance. ECF No. 15 at 15-16. This argument is not persuasive. The ALJ is required to consider "all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). Indeed, the regulations indicate that medical opinion evidence predating the claimant's filing can be relevant. *See* 20 C.F.R. §§ 404.1512(b), 416.912(b) (stating that "[b]efore we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application."). In an unpublished disposition, the Ninth Circuit held it was error for the ALJ to "silently disregard" medical opinion evidence that predates the alleged onset date. *Williams v. Astrue*, 493 F. App'x 866, 868 (9th Cir. 2012).

Plaintiff filed her applications on January 23, 2015 and alleged a disability onset date of June 17, 2014. Tr. 221-36. Dr. Hill's medical opinion speaks directly to the physical limitations that Plaintiff alleges resulted in her inability to continue working. Tr. 360-63, 365-66. He specifically addressed Plaintiff's right shoulder strain that led to surgery, and the ALJ found the residuals from her right rotator cuff tear surgery to be a severe impairment during the relevant time period.

Tr. 18, 362-63, 365-66.  Dr. Hill provided an opinion about the effect Plaintiff's shoulder impairment would have on her job as a packer, sorter, and bathroom monitor at Cowiche Growers, a position that Plaintiff held until June 2014, the month of her alleged disability onset date.  Tr. 362-68.  Dr. Hill provided his treatment and opinion three months prior to Plaintiff's alleged disability onset date, and although Plaintiff had surgery on her right shoulder in July 2014, there is evidence in the record that shows Plaintiff continued to have problems with her right shoulder following surgery.  In his decision, the ALJ referenced the time period before Plaintiff's surgery, suggesting that this time period was relevant to Plaintiff's case.  *See* Tr. 21 ("In June 2014 [Plaintiff] displayed limited range of motion of her right shoulder); *see also* Tr. 22 ("The record also noted that, prior to her July 2014 right should surgery, [Plaintiff] was released for light duty in the packing plant"); *see also* Tr. 23 ("It was noted that, prior to her July 2014 surgery, [Plaintiff] was already released for light duty in the packing plant.").  Although Dr. Hill's opinions specified that Plaintiff's modified duty would last through April 7, 2014, Tr. 362, Dr. Pierson's treatment notes from February 2015 discuss an activity prescription form keeping her on limited duty even though she was no longer employed.  Tr. 385.  Thus, Dr. Hill's medical opinion was significant probative evidence despite being rendered three months before the alleged disability onset date, and the ALJ was required to at least address his statements.

*See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (An ALJ must explain why significant probative evidence has been rejected).

This error is not harmless. The harmless error analysis may be applied where even a treating source's opinion is disregarded without comment. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). An error is harmful unless the reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the [evidence], could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Here, Dr. Hill, Plaintiff's treating physician, was the only medical source in the record to opine that Plaintiff had physical limitations that restricted her ability to use her left arm for repetitive work for more than four cumulative hours per day. Tr. 362-63. Dr. Hill was also the only medical source to limit Plaintiff to occasional reaching, working above her shoulders, or forcefully grasping with her left side. Tr. 362. The ALJ did not discuss these opined limitations—wholly disregarding Dr. Hill's opinion. Although the vocational expert did not testify as to the left side limitations opined by Dr. Hill, the vocational expert did testify that if an individual with Plaintiff's RFC was also limited to zero to one hour of reaching with the right upper extremity, one to three hours of reaching with the left upper extremity, and lifting up to 10 pounds occasionally and seven and a half pounds frequently, that individual would be precluded from performing all of Plaintiff's past relevant

work. Tr. 61-62. Based on this record, the Court cannot confidently conclude that the disability determination would remain the same were the ALJ to fully credit Dr. Hill's opinion.

On remand, in light of Plaintiff's degenerative joint disease of the right foot, residuals from right rotator cuff tear surgery, and the passage of time since the ALJ's September 29, 2017 decision, the ALJ is instructed to schedule a consultative examination pursuant to 20 C.F.R. §§ 404.1512, 416.912, take testimony from a medical expert if warranted, reconsider the medical evidence as to Plaintiff's physical limitations, including Dr. Hill's opinion, and, if necessary, resolve conflicts in the evidence.

### 6. Dr. Pierson

Plaintiff's treating orthopedic surgeon, Roy Pierson, M.D., performed surgery on Plaintiff's right shoulder on July 14, 2014. Tr. 430-31. Prior to her surgery, in March 2014, Dr. Pierson reported that Plaintiff was given an activity prescription form taking her off work pending further evaluation. Tr. 399. After her surgery, in January 2015, Dr. Pierson reported that Plaintiff was given an activity prescription form limiting the use of her right arm. Tr. 387. In October and November 2015, Dr. Pierson noted that Plaintiff was given activity prescription forms allowing her to work in a light duty capacity with no overhead activities. Tr. 390, 392.

The ALJ failed to discuss Dr. Pierson's opinion or assign a level of weight to it. The ALJ must evaluate every medical opinion received according to a list of factors set forth by the Social Security Administration. 20 C.F.R. §§ 404.1527(c), 416.927(c). "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison*, 759 F.3d at 1012 (citing *Nguyen*, 100 F.3d at 1464). Dr. Pierson's treatment notes contained a medical opinion: a "statement[] from [an] acceptable medical source[] that reflect[s] judgments about the nature and severity of [Plaintiff's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairments(s) and [her] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Defendant asserts that the ALJ was not required to address Dr. Pierson's statements because his reports that Plaintiff was on limited duty or that she should limit certain activities were vague and failed to set forth any work limitations. ECF No. 15 at 16. This argument is not persuasive. Dr. Pierson opined that Plaintiff was unable to work pending further evaluation, Tr. 399, Plaintiff was to limit use of her right arm, Tr. 387, and Plaintiff could work in a light duty capacity with no overhead activities, Tr. 390, 392. Indeed, in its own argument about Plaintiff's symptom complaints, Defendant asserted that Dr. Pierson opined Plaintiff should be limited from overhead activities but otherwise could return to a limited duty position. ECF No.

15 at 7 (citing Tr. 392). An ALJ may reject an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity," but here, Dr. Pierson precluded Plaintiff from performing any overhead activities. Tr. 390; *see Morgan,* 169 F.3d at 601. Further, Dr. Pierson's statements were provided during the time period at issue. The ALJ was required to at least address Dr. Pierson's statements. *See Vincent*, 739 F.2d at 1394-95 (An ALJ must explain why significant probative evidence has been rejected). Because this case is remanded on other grounds, the Court declines to engage in harmless error analysis here.

### D.     Lay Opinion Evidence

Plaintiff argues that the ALJ erred by failing to consider statements provided by lay witness Mary Cline, Plaintiff's sister. ECF No. 14 at 19. Ms. Cline provided a letter describing Plaintiff's impairments. Tr. 327. Ms. Cline specifically mentioned Plaintiff's arm and neck pain, as well as Plaintiff's mental status. Tr. 327. Although Ms. Cline's letter was not dated, she noted that Plaintiff had been working part-time for the last 10 months. Tr. 327. Ms. Cline stated that Plaintiff was "still having a lot of issues with her arm," Plaintiff was "not

functioning at her best, mentally or physically," and "[i]t will take time to heal."
Tr. 327. The ALJ failed to mention Ms. Cline's statements.

An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout*, 454 F.3d at 1053. Lay witness testimony cannot establish the existence of medically determinable impairments, but lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Id.*; 20 C.F.R. §§ 404.1513, 416.913; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen*, 100 F.3d at 1467 (citing *Dodrill*, 12 F.3d at 919).

Defendant concedes that the ALJ erred by not addressing Ms. Cline's statements. ECF No. 15 at 16. However, Defendant argues the error was harmless because the ALJ gave clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom testimony, and Ms. Cline's statements that Plaintiff continued to experience shoulder pain generally mirrored Plaintiff's allegations. ECF No. 15 at 16-17 (citing Tr. 21-23). However, the ALJ did not mention Ms. Cline's statements, and thus, the ALJ's decision regarding the weight assigned to Ms. Cline's opinion is unreviewable. *See*

*Garrison*, 759 F.3d at 1012; *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.")  The ALJ erred by failing to provide germane reasons to discount Ms. Cline's statements.  Because this case is remanded on other grounds, the Court declines to engage in harmless error analysis here.

**E.    Other Challenges**

Plaintiff raises a challenge to the ALJ's evaluation of Plaintiff's past relevant work at step four.  ECF No. 14 at 19-21.  Because this case is remanded to reconsider the physical medical opinion evidence and the lay opinion evidence, the Court declines to address this challenge here.

**F.    Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 14 at 21.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court."  *Sprague*, 812 F.2d at 1232 (citing *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)).  When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings."  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper

ORDER - 44

course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, further proceedings are necessary. As discussed *supra*, the ALJ erred by failing to evaluate Dr. Hill's opinion regarding Plaintiff's physical functional limitations. However, Dr. Hill's opinion was contradicted by the nonexamining opinion of Dr. Vestal, who did not assign any limitations to Plaintiff's use of her left upper extremity. Tr. 99-100. The ALJ gave Dr. Vestal's opinion some weight.

ORDER - 45

Tr. 24.  Even if the ALJ were to have fully credited Dr. Hill's opinion, the evidence would present an outstanding conflict for the ALJ to resolve.  Therefore, further proceedings are necessary for the ALJ to resolve potential conflicts in the evidence.  The ALJ is instructed to conduct a new sequential analysis on remand, including reconsidering Plaintiff's symptom testimony, lay witness statements, and analyses at steps four and five in light of the new assessment of the medical opinion evidence pertaining to Plaintiff's physical impairments, including the opinions of Drs. Vestal, Hill, and Pierson.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

ORDER - 46

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED August 19, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 47